IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JANICE WOLK GRENADIER,            )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    1:14cv827 (LMB/TCB)
                                  )
BWW LAW GROUP, et al.,            )
                                  )
          Defendants.             )

## MEMORANDUM OPINION

Before the Court are three motions to dismiss plaintiff's Ammended Verifyed Complaint

[sic] ("Amended Complaint"), plaintiff's opposition to each motion to dismiss, three

miscellaneous motions filed by plaintiff, and plaintiff's motion for default judgment against two of

the defendants.   For the reasons that follow, defendants' motions to dismiss under Fed. R. Civ. P.

12(b)(6) will be granted, which decision will render all of plaintiff's motions moot.   Therefore, all

her motions will be denied.[1]

### I.      BACKGROUND

Plaintiff Janice Wolk Grenadier ("plaintiff" or "Grenadier"), proceeding pro se, initiated

this civil action to prevent future foreclosure attempts on her property and to recover damages

against seven defendants:   BWW Law Group ("BWW"); Howard N. Bierman ("Bierman");

Equity Trustees, LLC ("Equity"); Mark R. Galbraith ("Galbraith"); Wells Fargo, National

Association, as Trustee for Option One Mortgage Loan Trust 2005-2, Asset-Backed Certificates,

---

[1] In one of those motions [Dkt. No. 49], plaintiff asks that all judges in this district be recused from
handling this action because she is concerned about one judge, not the undersigned.   There is no
merit to that motion, which will be denied on the merits.

Series 2005-2[2] ("Wells Fargo"); Bank of America, N.A., successor-in-interest to LaSalle Bank, N.A. ("BANA"); and Ocwen Loan Servicing, LLC ("Ocwen").   Galbraith is the only defendant who has not yet been served with this lawsuit.   Of the remaining defendants, only BWW and Bierman have not filed a response of any kind; however, because plaintiff's Amended Complaint fails to state cognizable claims against any named defendant, her motion for default judgment against these two defendants will be denied.

This civil action arises out of the financing of real property in Alexandria, Virginia, owned by Grenadier (the "Property").   Am. Compl. ¶ 16.   According to the Amended Complaint, on February 4, 2005, plaintiff received a loan for $390,000 from Mortgage and Equity Funding Corporation ("MEFC"), which was evidenced by a Note that was secured by a Deed of Trust for the Property.   Id. ¶ 27; Ex. 19[3] (first page of the original Deed of Trust).   That same day, MEFC assigned all of its interest in the Note and Deed of Trust to Option One Mortgage Corporation ("Option One").   Am. Compl. ¶ 27; Ex. 20 (Assignment of Deed of Trust from MEFC to Option One).

In less than a year and a half, plaintiff fell into arrears in her mortgage payments.   See Ex. 15, at 3 (letter dated May 26, 2006, from Howard Bierman, an attorney with BWW[4] and counsel for substitute trustee Equity, to Grenadier informing her that Option One had requested his firm institute foreclosure proceedings).   From the Amended Complaint, it is unclear exactly what

---

[2]  Plaintiff incorrectly named this defendant as "Wells Fargo."
[3]  Plaintiff cites to the exhibits attached to her original complaint throughout her Amended Complaint, but she did not actually attach any exhibits to the Amended Complaint.   The citations to plaintiff's exhibits in this Memorandum Opinion, cited as "Ex. ___," refer to the exhibits attached to the original complaint.
[4]  BWW Law Group was then known as Bierman, Geesing & Ward, LLC.

happened between 2006 and the present time, but it appears plaintiff has managed to avoid a foreclosure sale.[5]

On October 15, 2007, plaintiff entered into an agreement with Option One modifying the loan to increase the unpaid principal balance to $436,235.86, which consisted of the unpaid amount of the original principal plus the interest capitalized to date ($50,937.10).  Ex. 22 (first two pages of the Loan Modification Agreement).  The loan was subsequently transferred multiple times, and plaintiff alleges she has not been able to discern which entity owns the original Note. In addition, servicing of plaintiff's loan was transferred from Homeward Residential Inc. ("Homeward") to Ocwen, effective February 19, 2013.  Am. Compl. ¶¶ 44-45; Ex. 8 (letter dated January 28, 2013, informing plaintiff of the transfer).

Before the transfer of servicing occurred, plaintiff had been engaged in the process of seeking a loan modification under the Home Affordable Modification Program ("HAMP") with Homeward.  Am. Compl. ¶ 45.  Plaintiff alleges that a Homeward supervisor had advised her on three different occasions that all of the documents were in place for the HAMP modification and that the pending foreclosure had been stayed.  Id.  On February 19, 2013, Ocwen took over the servicing of plaintiff's loan and informed plaintiff that she would need to resubmit the documents for a HAMP modification but that she should "ignore the foreclosure date" because "a foreclosure sale cannot be conducted until after the evaluation of the HAMP program is complete."  Id. ¶ 46 (internal quotation marks omitted).  In a series of e-mails, Allison Melton ("Melton"), an attorney with defendant BWW, advised Grenadier that the substitute trustee, Equity, still had the

---

[5] This is likely due in part to plaintiff's having filed bankruptcy petitions five times since taking out the loan at issue.  See Case Nos. 07-11602, 08-11841, 09-11348, 12-12665, and 13-10791 in the U.S. Bankruptcy Court for the Eastern District of Virginia.  The Property has been scheduled for a foreclosure sale at least three times—in 2007, 2008, and 2013.  See Ex 9, at 4; Ex. 15, at 2, 4.

foreclosure sale scheduled for February 22, 2013, and that she should contact her loan servicer, Ocwen, with any inquiries about her loan or about loss mitigation.   Ex. 9, at 4.   Plaintiff alleges that "Ocwen again reassured [her] they could not foreclose as the [HAMP] process had begun with Ocwen and it was illegal for them to foreclose on [p]laintiff."  Am. Compl. ¶¶ 47, 50.   After plaintiff conveyed her phone calls with Ocwen to Melton, Melton forwarded plaintiff's e-mails to a manager at Ocwen, who confirmed via e-mail that the sale should proceed as scheduled.   Ex. 9, at 9.   The next day, February 21, 2013, plaintiff filed for bankruptcy to forestall the foreclosure sale through the automatic stay accompanying bankruptcy actions.   Am. Compl. ¶ 51; Ex. 10, at 3.   The foreclosure sale scheduled for February 22, 2013, was cancelled and Equity has not sought to reschedule it since.

In June 2013, the bankruptcy court dismissed plaintiff's petition "with prejudice to refiling under any chapter of the Bankruptcy Code in this or any other court for a period of 1 year" because Grenadier had filed five bankruptcy cases since 2000, as well as for other reasons stated at the hearing.   In re: Grenadier, Case No. 13-10791 (Bankr. E.D. Va. June 24, 2013) (emphasis in original) (order dismissing case).   During the course of the bankruptcy proceeding, Grenadier learned through an e-mail exchange with attorney Mark Galbraith that his client "Wells Fargo Bank, N.A. as Trustee" was "the current and sole noteholder" for plaintiff's loan.   Ex. 22, at 4-5.

Plaintiff filed her original complaint in July 2013 in the U.S. District Court for the District of Columbia.   That court immediately ordered the action transferred to this district, which is where plaintiff resides, most of defendants conduct business, and the property is located. Transfer Order, July 29, 2013.   Plaintiff unsuccessfully appealed that decision and her complaint

was transferred to this court.[6]   She then filed the Amended Complaint at issue in the motions to dismiss.

The Amended Complaint consists of eleven counts captioned as follows:

Count 1:  "Federal False Claims Act, 31 U.S.C § 3729(a)(1)(A)[-(C)]"
Count 2:  "Breach of Contract - Implied Covenant of Good Faith and Fair Dealing -
Breach of Contractual Duty of Good Faith and Fair Dealing Honest Services 18
U.S.C. § 1346"
Count 3:  "Violation of the Fair Debt Collection Practices Act"
Count 4:  "Wrongful Foreclosure Threat - Failure to Comply with HAMP rules"
Count 5:  "Consumer Protection Act"
Count 6:  "Breach of Fiduciary Duty - Unjust Enrichment/Constructive Trust"
Count 7:  "Injunctive/Declaratory Relief"
Count 8:  "Common Law Fraud 12 U.S.C. § 1972"
Count 9:  "Negligence - the negligent infliction of emotional distress; the intentional
infliction of emotional distress"
Count 10:  "Constructive Fraud"
Count 11:  "Civil Conspiracy"

Plaintiff seeks an award of $38 million in "compensatory, punitive, [and] exemplary damages"

against defendants "to send a strong message that this type of behavior is unacceptable and to

reimburse [plaintiff] from [sic] potential income loss." Am. Compl. at 24.   She also seeks a stay

of any foreclosure proceeding against her property, declaratory judgment that defendants' conduct

was unconstitutional and negligent, and an injunction requiring defendants to adopt appropriate

policies.

## II.    DEFENDANTS' MOTIONS TO DISMISS

In their motions to dismiss, defendants Wells Fargo, Ocwen, BANA, and Equity argue

that, for a number of reasons, the Amended Complaint should be dismissed with prejudice in its

entirety pursuant to Rule 12(b)(6) for failure to state any claim upon which relief can be granted.

---

[6] It took almost a full year for this case to be transferred because Grenadier moved for
reconsideration of the Transfer Order, appealed the Transfer Order to the D.C. Circuit, and then
moved for reconsideration of the D.C. Circuit's decision affirming the transfer.   The basis for her
appeal was her claim that the Virginia state and federal courts are biased against her.

They also correctly argue that the Amended Complaint, as well as plaintiff's oppositions to the motions to dismiss, largely lacks coherence.[7]

### A.   Standard of Review

For purposes of a motion to dismiss, a court assumes the complaint's well-pleaded allegations to be true and views all facts in the light most favorable to the plaintiff, as required by Fed. R. Civ. P. 12(b)(6).   T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC, 385 F.3d 836, 841 (4th Cir. 2004).   To survive a motion to dismiss, "the '[f]actual allegations must be enough to raise a right to relief above the speculative level' to one that is 'plausible on its face' rather than merely 'conceivable.'"   Alliance Tech. Grp., LLC v. Achieve 1, LLC, No. 3:12-cv-701, 2013 WL 143500, at *2 (E.D. Va. Jan. 11, 2013) (citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

For fraud claims, "[i]n addition to the general pleading requirements of Rule 8, the 'circumstances' of fraud must be pled with particularity, except that allegations of scienter only need to be alleged generally."   Id. at *3 (citing Fed. R. Civ. P. 9(b)).   Specifically, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" must be alleged to satisfy Rule 9(b).   Id. (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)).   The purposes of the heightened particularity standard for fraud "are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, to protect the defendant against frivolous suits, to eliminate fraud actions where all of the facts are learned only after discovery, and to

---

[7] Both of plaintiff's opposition briefs also improperly request that "a Judge out of [sic] immediate area including the District of Columbia and Maryland be appointed to hear this case with all Motions."   Resp. to Bank of Am., Wells Fargo, and Ocwen 13; Mot. in Resp. Equity Trustees LLC to Dismiss 14.   To the extent this request warrants a response, it is denied.

safeguard the defendant's reputation."   Grant v. Shapiro & Burson, LLP, 871 F. Supp. 2d 462, 468 (D. Md. 2012).

Although a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), "even a pro se plaintiff must clear the modest hurdle of stating a plausible claim showing entitlement to relief." Young v. CitiMortgage, Inc., No. 5:12-cv-79, 2013 WL 3336750, at *12 (W.D. Va. July 2, 2013) (order adopting report and recommendation). "[T]he special judicial solicitude with which a district court should view . . . pro se [filings] does not transform the court into an advocate." United States v. Wilson, 699 F.3d 789, 797 (4th Cir. 2012) (alterations in original) (internal quotation marks omitted). Moreover, allegations of wrongdoing attributed to multiple defendants collectively may decrease the plausibility of the allegations when reviewed specifically in reference to individual defendants. See Alliance, 2013 WL 143500, at *3 ("In the Complaint now under review, many of the omnibus allegations against 'the Defendants' are conclusory, meriting minimal credit. . . . [T]he Court must remain mindful of the indiscriminate character of those allegations against the 'Defendants.' While such pleading is not prohibited per se, it impacts the Court's plausibility analysis with respect to [the moving defendants].").

**B.    Overarching Issues**

The gravamen of plaintiff's Amended Complaint is that none of the defendants has the legal authority to foreclose upon her home because the assignments of the Note and Deed of Trust were invalid due to allegedly forged signatures affixed to them. See, e.g., Am. Compl. ¶ 38. Plaintiff further contends that the securitization process rendered her loan obligation unenforceable. See, e.g., id. ¶¶ 62, 71-72, 74. Plaintiff also argues that the most recent

7

foreclosure proceeding, in February 2013, violated HAMP.   See, e.g., id. ¶¶ 85-86.

Additionally, plaintiff takes issue with the fact that none of the defendants has produced the

original Note.   See, e.g., id. ¶¶ 11, 20, 53.

Defendants respond with numerous arguments, including that plaintiff lacks standing to

challenge any of the assignments or the securitization process; that there is no private right of

action for HAMP violations; that plaintiff's "show me the note" argument has been rejected under

Virginia law; and that as a matter of law, her rambling allegations fail to make out cognizable

causes of action.

  1. <u>Standing</u>

Defendants argue that plaintiff lacks standing to challenge the validity of the assignments.

In <u>Wolf v. Fed. Nat. Mortgage Ass'n</u>, 512 F. App'x 336, 342 (4th Cir. 2013), a borrower

challenged the assignment of a note, arguing that the assignor did not have the right to assign the

note and that neither the assignor nor the assignee possessed the note when it was purportedly

assigned because the note was lost at that time.   <u>Id.</u>   The district court dismissed this claim on the

ground that Wolf, the borrower, lacked standing to challenge the propriety of the assignment.   <u>Id.</u>

In affirming that decision, the Fourth Circuit explained that among the prudential limitations on

standing "is the principle that a party generally must assert his own legal rights and interests, and

cannot rest his claim to relief on the legal rights or interests of third parties."   <u>Id.</u> (internal

quotation marks omitted).   In Virginia, to have legal rights to sue on a contract, one must be a

party to or beneficiary of the contract.   <u>Id.</u> (citing <u>Mich. Mut. Ins. Co. v. Smoot</u>, 129 F. Supp. 2d

912, 920 (E.D. Va. 2000)).   In <u>Wolf</u>, the borrower, had no interest in the assignment because it did

not affect Wolf's rights or duties at all; following the assignment, Wolf still had the same

obligation under the note to make payments.   <u>Id.</u>   This same reasoning applies to Grenadier, who

has not alleged any facts showing that she is either a party to or an intended third party beneficiary of any of the assignments of her Note and Deed of Trust.   Accordingly, under Virginia law, she lacks standing to raise any claims attacking the validity of those assignments, including her claims for the alleged "robo-signing" of the assignments.

For the same reasons, plaintiff lacks standing to challenge any defects in the securitization process for the Note.   See, e.g., Figueroa v. Deutsche Bank Nat'l Tr. Co., No. 1:13-cv-592 (E.D. Va. July 10, 2013) ("Nor is the plaintiff a party to the [pooling and servicing agreement ("PSA")], or a third-party beneficiary under the PSA.   The PSA, or any violation thereof, therefore, provides no legal basis upon which to enjoin the foreclosure."), aff'd, 548 F. App'x 85 (4th Cir. 2013) (per curiam).   Furthermore, plaintiff's argument that the loan is no longer enforceable because it has been securitized and is now owned by many shareholders has likewise been rejected.   See Ruggia v. Washington Mut., 719 F. Supp. 2d 642, 647 (E.D. Va. 2010) ("Under Virginia law, when a note is assigned, the deed of trust securing that debt necessarily runs with it. . . . Thus, a deed of trust continues to secure the holder of a note and nothing in the negotiation or putative securitization of a note renders it unsecured."), aff'd, 442 F. App'x 816 (4th Cir. 2011) (per curiam).

Grenadier also lacks standing to allege violations of HAMP.   See, e.g., Am. Compl. ¶¶ 83, 85-87, 95, 115, 121, 123.   Although participating loan servicers are obligated to comply with HAMP guidelines in order to receive servicer benefits, "HAMP does not create a private right of action for borrowers against lenders and servicers."   Bourdelais v. J.P. Morgan Chase, No. 3:10-cv-670, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) (collecting cases).   Because HAMP provides no private right of action, plaintiff lacks standing to recover on any alleged HAMP violations.

2.      "Show Me the Note"

Many of plaintiff's causes of action are premised on defendants' alleged refusal to produce the original Note.  See, e.g., Am. Compl. ¶¶ 53, 77, 98.  This "show me the note" argument "has been widely rejected as 'contrary to Virginia's non-judicial foreclosure laws.'"  Hien Pham v. Bank of New York, 856 F. Supp. 2d 804, 810 (E.D. Va. 2012) (quoting Gallant v. Deutsche Bank Nat'l Trust Co., 766 F. Supp. 2d 714, 721 (W.D. Va. 2011)).  The Hien Pham court elaborated:

> [J]ust as a noteholder is not "required to come to a court of law and prove its authority or standing to foreclose on a secured property," so too a nominal beneficiary or a substitute trustee, for the same reason, should not be required to prove in court that it has the noteholder's authority.  To conclude otherwise would allow borrowers to compel judicial intervention in any foreclosure proceeding where a deed of trust has changed hands or a substitute trustee has been appointed.  This result would be plainly contrary to Virginia law, which allows a trustee to foreclose on a loan in default, even if the original note cannot be found, without first seeking a court order.

Id. (footnote omitted).   Therefore, plaintiff's claims regarding defendants' failure to produce the Note before foreclosure are not cognizable under Virginia law.

For these reasons, plaintiff's overarching claims fail under well-established Virginia law.

C.      **Specific Counts**

In addition to the defective overarching claims for which plaintiff either lacks standing or which have been rejected, defendants also correctly argue that plaintiff's specific counts fail to state a claim upon which relief can be granted.

1.      Count 1 - Federal False Claims Act

The False Claims Act ("FCA") prohibits the submission of fraudulent claims or invoices to the federal government for payment.  See 31 U.S.C. § 3729.  It reaches "all types of fraud, without qualification, that might result in financial loss to the Government."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 788 (4th Cir. 1999) (quoting United States v.

Neifert-White Co., 390 U.S. 228, 232, (1968)) (citation and footnote omitted). FCA claims must meet the heightened pleading standard of Rule 9(b), U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010), and private FCA actions must comply with the procedural requirements of 31 U.S.C. § 3730, including bringing the action in the name of the United States government, serving the government, and filing the complaint in camera and under seal to give the government an opportunity to intervene. 31 U.S.C. § 3730.

In Count 1, plaintiff contends that defendants used false signatures in the assignments at issue and falsely represented that they held good title to the Property, thereby impairing the securities created in part from plaintiff's loan obligation and that these "impaired securities" were transferred to the United States Treasury or other government-funded entity such that defendants are liable for a violation of the FCA. Am. Compl. ¶¶ 71-74.

It is clear that Grenadier has not complied with any of the procedural requirements for a FCA action. Moreover, the documents that plaintiff alleges were fraudulently signed are private contracts that do not relate to any claim involving the United States government. For these reasons, Count 1 is completely meritless and will be dismissed.

        2.      Count 2 - Breach of Good Faith and Fair Dealing; Honest Services 18 U.S.C. § 1346

In Count 2, plaintiff appears to raise a general breach of contract claim, as well as a claim for breach of the implied covenant of good faith and fair dealing and a claim under 18 U.S.C. § 1346. The elements of a breach of contract action under Virginia law are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). Plaintiff has not alleged any of these elements and has not even identified the contract that was allegedly breached. She merely describes the breach as

defendants' "involvement with breaking the chain of title and creating a situation where [she] could not sell the [Property]" and alleges that the breach "was created when the documents by Wells Fargo [and] Bank of America were forged, by known robo signers." Am. Compl. ¶¶ 78, 81. The alleged break in the chain of title seems to stem from the multiple assignments at issue; however, plaintiff never alleges that the Note prohibits assignment. "[A]bsent a contrary provision, notes are generally freely transferable, and the transferee retains the right to enforce the instrument." Ruggia, 719 F. Supp. 2d at 647 (citing Va. Code Ann. § 8.3A-203(b)). Therefore, plaintiff has failed to state a claim for breach of contract based on the mere fact that assignments occurred. In addition, any breach that occurred as a result of purported fraudulent signatures affixed to the assignments would only be actionable by someone with standing to challenge the validity of the assignments. As previously explained, plaintiff lacks such standing. Therefore, her general breach of contract claims fail under Rule 12(b)(6).

In Count 2, plaintiff also claims that "defendants" breached the covenant of good faith and fair dealing by refusing to provide the original Note at plaintiff's request. Am. Compl. ¶ 77. This claim fails for the same reasons as her breach of contract claim because in Virginia a breach of the covenant of good faith and fair dealing "creates a claim for breach of contract" rather than an independent cause of action. Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp., 407 F. Supp. 2d 758, 762 (E.D. Va. 2005). Plaintiff has not alleged that any language in the loan documents requires defendants to produce the original Note to plaintiff upon demand. She also does not specify which defendants refused a request by her to see the Note. Moreover, in an e-mail exchange between Melton, an attorney with BWW (counsel for substitute trustee Equity), and plaintiff that occurred the day after plaintiff had filed for bankruptcy to forestall the February 22, 2013, foreclosure sale, Melton states that "we would be happy to bring the original Note to a

12

motion for relief hearing at the Alexandria bankruptcy court so that you can inspect it." Ex. 14, at 1. Therefore, plaintiff fails to state a plausible breach of contract claim based on a breach of the implied covenant of good faith and fair dealing.

Lastly, in Count 2, plaintiff alleges that "defendants" "schemed to foreclose on [her] home with forged documents" and "with knowledgeable intend [sic] of [f]raud," citing to 18 U.S.C. § 1346 as the legal basis for the claim. Am. Compl. ¶ 76. This statutory provision codifies honest services fraud, which the Supreme Court has narrowly interpreted to mean a fraud scheme for bribery or kickbacks. See Skilling v. United States, 561 U.S. 358, 408 & n.42, 409 (2010). Neither bribery nor kickbacks are at issue in this case; therefore, plaintiff fails to state a valid claim for honest services fraud, and all the claims in Count 2 will be dismissed.

### 3. Count 3 - Fair Debt Collection Practices Act

To state a claim under the Fair Debt Collection Practices Act ("FDCPA"), a plaintiff must allege that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt[] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Dikun v. Streich, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005) (internal quotation marks omitted). Mortgage lenders and servicing companies are not "debt collectors" under the FDCPA and are therefore not liable under the FDCPA. See, e.g., Schmidt v. Wells Fargo Home Mortg., No. 3:11-cv-59, 2011 WL 1597658, at *4 (E.D. Va. Apr. 26, 2011) ("[C]ourts in this district have consistently held, without reversal, that mortgage servicers are not debt collectors under the FDCPA . . . ."), aff'd, 482 F. App'x 868 (4th Cir. 2012); Ramirez-Alvarez v. Aurora Loan Servs., LLC, No. 01:09-cv-1306, 2010 WL 2934473, at *5 (E.D. Va. July 21, 2010) ("The provisions of the FDCPA generally apply only to debt collectors, and debt collectors do not include consumer's creditors [or] mortgage servicing

13

companies . . . ."); Scott v. Wells Fargo Home Mortg., Inc., 326 F. Supp. 2d 709, 718 (E.D. Va.

2003) ("[T]he law is well-settled . . . that creditors, mortgag[ee]s, and mortgage servicing

companies are not debt collectors and are statutorily exempt from liability under the FDCPA."

(emphasis in original)).

Plaintiff has not shown that any of the defendants are debt collectors within the meaning of

the FDCPA.   Accordingly, Count 3 fails to state a valid claim under Rule 12(b)(6) and will be

dismissed.

### 4.   Count 4 - Wrongful Foreclosure Threat; Failure to Comply with HAMP

There is no independent cause of action in Virginia for "wrongful foreclosure," let alone

for "wrongful foreclosure threat."   See, e.g., Hien Pham v. Bank of N.Y., 856 F. Supp. 2d 804,

811 (E.D. Va. 2012) ("Virginia does not recognize a cause of action for wrongful foreclosure.");

Young, 2013 WL 3336750, at *12.   Even if plaintiff could bring a claim for wrongful foreclosure,

her claim is based on alleged violations of HAMP.   See Am. Compl. ¶¶ 85-87.   As previously

explained, there is no private right of action under HAMP.   See, e.g., Bourdelais, 2011 WL

1306311, at *3.   Accordingly, Count 4 fails to state a claim upon which relief can be granted and

will be dismissed.

### 5.   Count 5 - Consumer Protection Act

In Count 5, plaintiff alleges only that "[BANA] and Wells Fargo used representatives to

use unfair or deceptive acts or practices in forgery and robo signing of documents" and that the

"deceptive acts of BWW Law Group caused [her] the loss of [f]unding for her company, and the

opportunity to meet the guidelines needed for the [HAMP] [l]oan."   Am. Compl. ¶¶ 91-92.

Presumably Count 5 refers to the Virginia Consumer Protection Act ("VCPA").   Under

the VCPA, it is unlawful for "a supplier in connection with a consumer transaction" to

"[m]isrepresent[] that goods or services are of a particular standard, quality, grade, style, or model." Va. Code Ann. § 59.1-200(A)(6).   The "VCPA specifically excludes from its coverage 'mortgage lenders,' [which are] defined as 'any person who directly or indirectly originates or makes mortgage loans.'" Green v. CitiMortgage, Inc., No. 5:11-cv-032, 2011 WL 5866230, at *7 (W.D. Va. Nov. 21, 2011) (citations omitted); see also McFadden v. Fed. Nat. Mortgage Ass'n, 525 F. App'x 223, 229-30 (4th Cir. 2013) (finding that the VCPA did not apply because the substitute trustee's appointment and actions with regard to the foreclosure sale are expressly provided for under Virginia law).

Plaintiff cannot maintain a VCPA claim against Wells Fargo or BANA as her mortgage lenders, and plaintiff fails to identify any of the alleged "deceptive acts" performed by BWW in violation of the VCPA.   Accordingly, Count 5 fails to state a claim upon which relief can be granted and will be dismissed.

### 6.   Count 6 - Breach of Fiduciary Duty; Unjust Enrichment/Constructive Trust

Under Virginia law, the elements of a cause of action for breach of fiduciary duty are:   (1) a duty; (2) a breach; and (3) loss or damage caused by the breach.   See Carstensen v. Chrisland Corp., 442 S.E.2d 660, 666 (Va. 1994).   A fiduciary relationship exists where a party vests the other party with significant discretion in the management of affairs on its behalf.   Oden v. Salch, 379 S.E.2d 346, 351 (Va. 1989).   A party may only bring a claim for breach of fiduciary duty where the duty breached is a common law duty and "not one existing between the parties solely by virtue of the contract." Augusta Mut. Ins. Co. v. Mason, 645 S.E.2d 290, 293, 295 (Va. 2007) (citations omitted).   In Virginia, it is well-settled that a lender does not owe a fiduciary duty to a borrower.   See, e.g., Wachovia Bank, N.A. v. Preston Lake Homes, LLC, 750 F. Supp. 2d 682, 690 (W.D. Va. 2010) ("[T]he existence of the debtor-creditor relationship does not create a

15

privilege or right of a fiduciary character."); <u>Wynn v. Wachovia Bank, N.A.</u>, No. 3:09-cv-136, 2009 WL 1255464, at *4 (E.D. Va. May 6, 2009) (holding that "no fiduciary duty is created based on the banking relationship").  Rather, the relationship between a lender and borrower sounds in contract.

In Count 6, plaintiff contends that BWW breached its fiduciary duty "when it put its financial gain above the law" and "when it ignored the HAMP rules for financial gain and greed. Am. Compl. ¶¶ 94-95.  Plaintiff further claims that BANA and Wells Fargo breached their fiduciary duty by purportedly allowing the mortgage documents to be fraudulently signed, thereby breaking the chain of title on the Property.  <u>Id.</u> ¶¶ 96-97.  She also claims that BWW, Bierman, and Galbraith breached their fiduciary duty by refusing to produce the original Note or any proof of the right to foreclose on the Property.  <u>Id.</u> ¶ 98.  Plaintiff alleges no basis for a fiduciary duty owed to her by any of the defendants other than the lender-borrower relationship, which does not give rise to fiduciary duties on the part of a lender.  Therefore, plaintiff's claim for breach of fiduciary duty fails to state a valid claim for relief.

Count 6 also appears to make a claim for unjust enrichment, which requires a plaintiff to allege facts showing "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; [and] (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." <u>Quick Serve Concepts, L.L.C. v. Cedar Fair, L.P.</u>, 83 Va. Cir. 59, 67 (Hanover Cnty. 2011) (internal quotation marks and citations omitted).  Unjust enrichment is a quasi-contractual remedy based upon the principles of equity and is inapplicable when there is an express contract between the parties.  <u>See</u> <u>Young</u>, 2013 WL 3336750, at *6 ("In the instant case, the first lien deed of trust and underlying promissory note define the obligations of

16

Citi and Young with respect to the property and preclude any unjust enrichment claim against Citi.").

To the extent that Count 6 includes a claim for unjust enrichment, such claim fails because plaintiff has failed to allege facts showing that she conferred a benefit on any of the defendants, that defendants knew of any such benefit and should reasonably have expected to repay plaintiff, and that defendants accepted any benefit without paying for its value.   Moreover, the Note and Deed of Trust are express contracts governing her mortgage loan.   Therefore, plaintiff fails to state a claim for unjust enrichment, and all claims in Count 6 will be dismissed.

> 7.    Counts 8 and 10 - Common Law and Constructive Fraud

To plead a claim for actual fraud under Virginia law, a plaintiff must allege:   "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."   Wolf, 512 F. App'x at 343 (citing State Farm Mut. Auto. Ins. Co. v. Remley, 618 S.E.2d 316, 321 (2005)).   A claim for constructive fraud relaxes the standard for intent, requiring only "a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation."   Lumbermen's Underwriting Alliance v. Dave's Cabinet, Inc., 520 S.E.2d 362, 365 (Va. 1999).   Any alleged promise of future action—whether false when made or otherwise—cannot support a claim for constructive fraud.   See SuperValu, Inc. v. Johnson, 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008).   Additionally, allegations of both common law and constructive fraud must comply with Rule 9(b)'s heightened pleading standard by pleading with particularity "the time, place, and contents of the false representations, as well as the identity of the

person making the misrepresentation and what he obtained thereby." Wolf, 512 F. App'x at 343-44 (internal quotation marks omitted).

In Count 8, plaintiff claims that, "on several occasions," money that she sent to her loan servicer was returned to her. Am. Compl. ¶ 102. Also "on several occasions," defendants made false statements of material facts. Id. ¶ 104. The only example she provides is Ocwen's alleged misrepresentation that she could ignore the foreclosure sale. Id. In Count 10, plaintiff claims that "defendants were deceptive of material misrepresentations of past and existing facts and remained silent when a duty to speak existed" and that defendants' actions were arbitrary and capricious. Id. ¶¶ 118-19.

Plaintiff's fraud claims do not survive the heightened scrutiny under Rule 9(b). Plaintiff has not alleged the time or place of any false representations or the identity of the speakers, nor has she delineated each defendant's role in the alleged false representations and explained how the actions of each satisfy all of the requisite elements. See, e.g., Goodrow v. Friedman & MacFadyen, P.A., No. 3:11-cv-20, 2012 WL 6725617, at *12 (E.D. Va. Dec. 27, 2012) ("[T]he Rule 9(b) problem is exacerbated in this [instance] because multiple defendants are involved, but the complaint does not clearly identify which Defendant played which role." (internal quotation marks omitted))." For these reasons, Counts 8 and 10 fail to state valid claims for common law or constructive fraud and will be dismissed.

 8. Count 9 - Negligence; Negligent and Intentional Infliction of Emotional Distress

Count 9 alleges that the "defendants had a legal duty to use reasonable care to protect the Chain of Title to the [Property]." Am. Compl. ¶ 112. Plaintiff claims that defendants' breach of this duty has caused her great emotional distress. Id. ¶¶ 112-114. Plaintiff also claims that the "defendants" were negligent by purportedly not following the HAMP rules. Id. ¶ 115.

18

To state a claim for negligence, plaintiff must allege "a legal duty on the part of the defendant, [a] breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." Blue Ridge Serv. Corp. v. Saxon Shoes, Inc., 624 S.E.2d 55, 62 (Va. 2006). Plaintiff's assertion that a lender has a common law duty of reasonable care regarding a chain of title has no support under Virginia law. Therefore, plaintiff fails to state a cognizable negligence claim.

A valid claim for intentional infliction of emotion distress requires a plaintiff to allege facts showing that "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." Ogunde v. Prison Health Servs., 645 S.E.2d 520, 526 (Va. 2007) (internal quotation marks omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russo v. White, 400 S.E.2d 160, 162 (Va. 1991) (internal quotation marks omitted). To plead a viable claim for negligent infliction of emotional distress under Virginia law, a plaintiff must allege a physical injury that is the proximate result of plaintiff's emotional distress. See Hughes v. Moore, 197 S.E.2d 214, 219 (Va. 1973).

Plaintiff fails to allege facts sufficient to support either intentional or negligent infliction of emotional distress. None of the alleged acts of any of the defendants are sufficient to support a claim for intentional infliction of emotional distress because they do not rise to the level of being "atrocious" and "utterly intolerable in a civilized community." Additionally, plaintiff has not alleged any physical injury to support her negligent infliction of emotional distress claim. Therefore, Count 9 fails to state a valid claim for relief and will be dismissed.

### 9.  Count 11 - Civil Conspiracy

Under Virginia law, the elements of a civil conspiracy claim are: "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." Firestone v. Wiley, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (quoting Glass v. Glass, 321 S.E.2d 69 (Va. 1984)).  A civil conspiracy claim "generally requires proof that the underlying tort was committed." Id. (quoting Almy v. Grisham, 639 S.E.2d 182, 189 (Va. 2007)).  "Where there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." Id. (internal quotation marks omitted).  "[T]o survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than mere conclusory language." Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotation marks omitted).

Plaintiff claims that "defendants" engaged in a civil conspiracy to prevent her from getting an opportunity to receive a HAMP refinance, to commit tortious interference with contractual relations, to commit abuse of process, to intentionally inflict emotional distress, and to commit injurious falsehood by advertising the foreclosure sale of the Property.  These claims are entirely conclusory and the Amended Complaint contains no details showing that there was an agreement between two or more of the defendants to achieve an unlawful purpose or to use unlawful means. Moreover, as explained above, the alleged underlying wrongs in this conspiracy claim are not actionable.  Accordingly, this count will be dismissed for failing to state a claim upon which relief can be granted.

### 10.  Count 7 - Injunctive and Declaratory Relief

To obtain a preliminary injunction, the plaintiff must show: (1) likelihood of success on the

20

merits; (2) likelihood of irreparable harm if an injunction is not granted; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction serves the public interest. See W. Va. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (citation omitted). The same standard applies to obtain a permanent injunction, except that actual success on the merits, instead of a likelihood of success, is required. See Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987). Because all of the other counts fail to state a claim, plaintiff has not demonstrated entitlement to injunctive relief.

The Declaratory Judgment Act provides that, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation." Hipage Co. v. Access2Go, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008). Declaratory relief is not available when the claims and rights asserted have fully matured, the alleged questionable conduct has already occurred, or the alleged damages have already been suffered. Id.

To the extent that plaintiff seeks declaratory relief, she has not established the existence of an actual controversy between herself and any of the defendants that would support an award of such relief. See Jones v. Sears Roebuck & Co., 301 F. App'x 276, 282 (4th Cir. 2008). The Note, Deed of Trust, and related loan documents delineate the rights of the parties here, and these rights have already accrued. Thus, declaratory relief is not appropriate. See Tapia v. U.S. Bank, N.A., 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (stating that "declaratory action cannot be used to redress alleged past wrongs"), aff'd, 441 F. App'x 166 (4th Cir. 2011). In addition, to the extent plaintiff seeks a declaratory judgment that defendants may not enforce the Deed of Trust, such

claim is not supported by Virginia law for all the reasons stated above.   Overall, plaintiff's claims

are "inconsistent with Virginia law and the Commonwealth's status as a non-judicial foreclosure

state."   Bolouri v. Bank of Am., N.A., No. 1:10-cv-225, 2010 WL 3385177, at *4 (E.D. Va. Aug.

24, 2010), aff'd, 442 F. App'x 816 (4th Cir. 2011) (per curiam).   Therefore, plaintiff's request for

injunctive and declaratory relief must be denied.

### III.   PLAINTIFF'S MOTIONS

As for plaintiff's motions, in addition to being moot, they are also meritless.   Local Civil

Rule 1 and the Electronic Case Filing Policies and Procedures manual ("ECF Manual") for the

Eastern District of Virginia only permit pro se parties the ability to elect to receive filings

electronically.   ECF Manual 21 (Nov. 1, 2013).   The rules do not permit pro se litigants to file

electronically, and plaintiff fails to provide any reasons why this rule should not be enforced in her

case.   For these reasons, her first motion [Dkt. No. 48] will be denied.

In her recusal motion, plaintiff expresses dissatisfaction with how one judge in this court

and his staff handled a previous matter.   That judge has nothing to do with this civil action.   This

motion also requests that oral argument be permitted on "any and all" motions and that all

decisions be made after all defendants have been served and plaintiff has been given an

opportunity to respond.   In civil proceedings, the parties do not have a right to oral argument.   A

court may determine that oral argument will not assist the decisional process and may, therefore,

resolve any motions on the papers.   Moreover, 28 U.S.C. § 1915 directs a district court to dismiss,

"at any time," a claim filed in forma pauperis if the cause of action fails to state a claim upon which

relief may be granted.   28 U.S.C. § 1915(e)(2)(B)(ii).[8]   As already explained, the Amended

---

[8] This statute provides in relevant part:   "Notwithstanding any filing fee, or any portion thereof,
that may have been paid, the court shall dismiss the case at any time if the court determines that . . .

Complaint does fail to state a claim.  For these reasons, there is no merit to the second motion [Dkt. No. 49], which will be denied.

In plaintiff's third motion, she appears to complain about a conflict among several lawyers concerning the sale of a different property from the one at issue in this action.  The rambling nature of the allegations renders this pleading essentially incomprehensible.  Furthermore, the motion does not appear to raise any legal contention germane to the issues in this action. Therefore, the third motion [Dkt. No. 50] will be denied.

Lastly, plaintiff's motion for default judgment against BWW and Bierman [Dkt. No. 60] will be denied because, as previously explained, the Amended Complaint fails to state any claim against BWW or Bierman upon which relief could be granted.

IV.     CONCLUSION

For the reasons stated above, the Court finds that the Amended Complaint fails to state a valid claim against any defendant.  Accordingly, defendants' motions to dismiss will be granted, and all of plaintiff's motions will be denied because they are moot, in addition to being meritless. Lastly, although this Amended Complaint and plaintiff's motions are meritless, the Court declines to award defendants Wells Fargo, Ocwen, and BANA the attorneys' fees they requested; however, should plaintiff continue to pursue frivolous claims through the reconsideration or appellate process, she may expose herself to being liable for defendants' costs in opposing such pleadings.

An Order reflecting this opinion will be issued with this Memorandum Opinion.

Entered this 30th day of January, 2015.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

the action or appeal . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii).